Bentley Kassal, J.
Plaintiff’s suit is for property damages to his automobile and for the loss of the contents of the trunk resulting from the theft of the vehicle from a parking lot operated by defendant, the Katz Parking System, Inc. Katz, in turn, commenced a third-party action against its insurance carrier Penn State Mutual Insurance Company, which had disclaimed coverage for this loss upon the principal ground, inter alia, that the auto was ‘ ‘ unattended ’ ’ and therefore coverage was excluded by the express language of .the policy.
The essential facts are not in dispute. On April 26, 1971, about 8:00 a.m., plaintiff parked his 1970 Plymouth in Katz’s open air lot. (This lot, which holds 118 cars in three rows, is surrounded by a fence with entrances on Front Street and on Peck Slip, and has a small shed for attendants, .approximately eight feet by eight feet, at the rear.) As usual, the attendant told him to leave the key in the ignition and, after receiving a receipt, he left.
Plaintiff further claims that eariler that day he had placed an electric guitar, saxophone and microphone in the car’s .trunk for a rehearsal that night. However, this fact was not mentioned to the attendant nor was the trunk key left.
*692 When plaintiff returned at 4:30 p.m., .the auto was missing. Approximately one month later the auto was recovered, but various items of equipment and engine and electrical parts had been removed as well as all the musical instruments.
The attendant testified that patrons were asked to leave ignition keys in the cars so that they could be moved. On the day of the loss, at about 4:00 p.m., plaintiff’s car was shifted to the front of the lot so that another car could be removed. The attendant placed the keys under the front mat and returned to the back of the lot to move another vehicle. While plaintiff’s auto was out of his sight for 5 to 15 minutes, it was stolen.
Shortly before plaintiff’s car disappeared, the attendant had noticed three boys walking near the lot entrance.
The issues presented by the above facts are:
(1) Was a bailment of the car created and is defendant liable for its loss?
(2) Is defendant liable for the loss of contents of the trunk?
(3) Is the third-party defendant responsible, under its policy, to defendant?
(1) When a motorist parks his car on a parking lot and the keys are delivered to an attendant with the right to move the car, and a receipt is given, a bailment for hire of the car is established. (Galowitz v. Magner, 208 App. Div. 6.)
Where there is a bailment for hire, failure to deliver the bailed item upon demand presents a prima facie case of negligence. This presumption may be rebutted and excused by showing that the goods were stolen, whereupon the burden shifts to the plaintiff to establish that defendant’s negligence in caring for the bailment enable the theft to occur. (Galowitz v. Magner, supra; Chaflin v. Meyer, 75 N. Y. 260.)
It is unquestioned that, for some time prior to the theft, plaintiff’s car was left unlocked with the keys in it and out of view of any of Katz’s employees. Under these circumstances such conduct by bailee, falling short of any standard of reasonable care, made the theft possible and bailee is therefore liable for the resulting damages. (Aetna Ins. Co. v. Marble Hill Garage, 146 Misc. 377.)
(2) As to the contents of the trunk, the situation is not analogous. It was neither disclosed nor reasonably to be anticipated that there would be expensive musical equipment in the trunk. Mere delivery of such items is not enough; knowing acceptance, either actual or constructive, is required to establish a bailment. (Swarth v. Barney's Clothes, 40 Misc 2d 423; General Motors Acceptance Corp. v. Grafinger, 61 Misc 2d 670; Waters v. Beau *693 Site Co., 114 Misc. 65, Ann. 27 ALR 2d 798.) Thus, as to such items, defendant was not a bailee, owed no duty to protect such property, and cannot be held liable for its loss. (Cohen v. Koster 133 App. Div. 570; General Motors Acceptance Corp. v. Grafinger, supra.)
(3) The third-party action is based upon a garagekeepers ’ legal liability insurance policy issued by the Penn State Mutual to Katz. Katz claims that it is covered by the policy for any liability resulting from the theft of plaintiff’s car.
During the trial, the third-party defendant, Penn State Mutual, moved to dismiss the third-party complaint based in part upon the following endorsement to the policy:
“ Endorsement #LCW-1, Locked Car Warranty.
“It is hereby understood and agreed that coverage is not afforded under coverages * * * D [theft] when the insured vehicle is left unattended and the key is left in the ignition or elsewhere in or upon the vehicle described hereunder.”
In opposition, Katz contends that any construction of the policy denying liability for this loss would be unreasonable and unconscionable. It further claims that the use of the word ‘ ‘ unattended ’ ’ in this contract is ambiguous and should be resolved in its favor as the insured (citing Matter of Vanguard Ins. Co. [Polchlopek], 18 N Y 2d 376).
No recovery can be had on a theft policy unless the loss is covered by its terms. (5 Appleman, Insurance Law and Practice, § 3209.) If an ambiguity exists, the court may be guided by such considerations as the reasonable expectations and purpose of an ordinary business man when making the agreement. (Bolling v. Northern Ins. Co. of N. Y., 253 App. Div. 693, mot. for lv. to app. den. 254 App. Div. 736, affd. 280 N. Y. 570.) But where there is no ambiguity, there is no occasion for the exercise of choice of interpretation and the policy will be construed according to the plain and ordinary meaning of its terms. (Ritchie v. Standard Sur. & Cas. Co., 257 App. Div. 545; Shannon v. Metropolitan Life Ins. Co., 146 Misc. 903.)
A review of case law in this jurisdiction reveals but one definition of the words ‘ ‘ attended ’ ’ and ‘ ‘ unattended ’ ’ when used in an exclusionary clause of an insurance contract. In Kinscherf Co. v. St. Paul Fire and Marine Ins. Co. (234 App. Div. 385, 386), the court was called upon to interpret a policy provision denying coverage “ whilst in or upon any automobile •' * * unless such conveyance is attended at the time the loss occurs by a permanent employee of the assured.” The court held (p. 386) that, “ such language can only be interpreted to *694 mean that if the permanent employee of the plaintiff is not actually within or on the automobile, or so near thereto as to be able to observe a theft of the contents, he shall not be deemed to be in attendance at the time the loss occurs
In Drieblatt v. Taylor (188 Misc. 199, 200), it was held that the fact that a locked .automobile was being watched from a first-floor window of an adjacent building did not prove attendance within the terms of an insurance policy excluding “ loss of the property insured herein from road vehicles of every description when such vehicles are left unattended ’ ’. After citing the definition of “ attended ” in Kinscherf Co. v. St. Paul Fire and Marine Ins. Co. (supra, p. 200), the court added, ■ ‘ The term ‘ unattended ’ has a connotation of lack of due diligence or protection which would exclude coverage.”
There appears to be no statutory or decisional basis to support the construction of the term ‘ ‘ attended ’ ’ as urged by defendant Katz and it has offered none. The common and ordinary meaning of the word, as interpreted in the cases cited above, clearly excludes coverage of a loss under the circumstances presented in this case.
All motions made at trial, not otherwise disposed of, are decided on the basis of this opinion. Judgment for plaintiff against the defendant for $1,243.34, with interest from April 26,1971. Judgment for the third-party defendant dismissing the third-party complaint.