Allen M. Myers, J.
In an action by insured plaintiffs against their insurers to reco'v'er the value of their respective losses, defendants move for summary judgment. For purposes of the motion, the defendants concede that the goods in question were *247 locked in the trunk of a car in the private garage adjacent to the home of plaintiffs’ now deceased jewelry salesman, Anthony P. Sheehan. Before entering his home, Sheehan activated the burglar alarms in the hood and trunk of the car and padlocked the garage door. On his return to the garage, several hours later, Sheehan discovered that the car was stolen.
The sole issue on this motion is the applicability to these facts of the clause in the insurance policy excluding coverage for: “ (I) Loss or damage to property insured hereunder while in or upon any automobile, motorcycle or any other vehicle unless, at the time the loss occurs, there is actually in or upon such vehicle, the Insured, or a permanent employee of the Insured, or a person whose sole duty it is to attend the vehicle. This exclusion shall not apply to property in the custody of a carrier mentioned in Section 2 hereof, or in the custody of the Post Office Department as first class registered mail.” This is apparently a standard clause in jewelry floaters.
This ease presents a unique problem. If the jewelry was stolen from the private, padlocked garage, there is coverage under the policy. If the jewelry was stolen from an unattended, locked motor vehicle, there is no coverage. What is the case when the jewelry is locked in the automobile and the automobile is stolen from the private padlocked garage Í
New York courts have been called upon to interpret the selfsame clause and similar clauses. In Greenberg v. Rhode Is. Ins. Co. (188 Misc. 23) plaintiff paid a stranger a dollar to watch his car and when he returned the jewelry was gone. The court held for the insurer, stating that (p. 25) “ ‘ Actual ’ means that which exists in fact or reality, in contrast to that which is constructive, theoretical or speculative ” and, under the facts, the vehicle was unattended. Similar clauses with less restrictive language have also been construed in favor of the insurer where the insured left jewelry in an unattended vehicle in a public place. (See Primo Outfitting Co. v. Glens Falls Ins. Co., 269 App. Div. 906, affd. 295 N. Y. 910; Kinscherf Co. v. St. Paul Fire & Marine Ins. Co., 234 App. Div. 385; Dreiblatt v. Taylor, 188 Misc. 199.) However, in the instant case, the vehicle was in the private garage adjacent to the owner’s house and the owner was in his house at the time of the disappearance of the car with the jewelry. Although Primo Outfitting Co. v. Glens Falls Ins. Co. (supra) involved a garaged car, it was left unlocked in a public garage. It therefore is not controlling here (but, see, Royce Furs v. Home Ins. Co., 50 Misc 2d 467).
The facts at bar render the clause, which is apparently unambiguous, of questionable clarity. Clearly unambiguous clauses *248 must be given their literal meaning. (First Nat. Bank v. National Surety Co., 228 N. Y. 471; Irwin v. Travelers Ins. Co., 243 App. Div. 377.)
However, there are situations, as here, where the clause is not susceptible to a literal interpretation, and the test of ambiguity is not whether the words used have an independently clear meaning, but, rather, whether the meaning is clear in relation to the facts sought to be applied thereto. Guidelines for such a situation have been set down in Matthews v. American Cent. Ins. Co. (154 N. Y. 449, 457) where the Court of Appeals stated: “ when a literal construction would lead to a manifest injustice to the insured and a liberal but still reasonable construction would prevent injustice by not requiring an impossibility, the latter should be adopted, because the parties are presumed, when the language used by them permits, to have intended a reasonable and not an unreasonable result ’ ’.
Similarly, the United States Court of Appeals in Lisi v. Alitalia-Lineo Aeree Italiane, (370 F. 2d 508, 511-512), warned against applying a literal interpretation to a clause when its result is manifestly unfair or leads to an absurd result. The court said: ‘1 While it is true that the language * * * is relevant to our decision, it must not become, as Justice Frankfurter stated it, a 1 verbal prison ’ Sullivan v. Behimer, 363 U. S. 335, 358 * * * (1960) (Frankfurter, J. dissenting). The task of ascertaining the meaning of words is difficult, undone certain way of misinterpreting them is by a literal reading.”
When reading the clause in conjunction with the entire insurance policy, a literal reading of the specific clause will not give the policy the original coverage envisioned. We are therefore called upon to interpret the entire policy and in such a situation, the langauge must be construed in favor of the policyholder and against the insurer, who is in fact responsible for the language used. (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44; Janneck v. Metropolitan Life Ins. Co., 162 N. Y. 574.)
This policy is a “ floater ’ ’ and its purpose is to cover ‘ ‘ all risks of loss or damage ” except as specifically excluded by the terms of the policy. A reading of these exclusionary provisions indicates that the insurer envisioned protection against risks such as those resulting from (1) inadequate security in public places or public transport facilities; (2) acts of God; (3) hostile or warlike acts as specified; (4) damage resulting from atomic fission; (5) damage due to inherent qualities prone to deterioration; and (6) goods in the custody of enumerated persons. These situations all protect against instances where neither insured nor insurer can provide an adequate measure of control *249 and where both are particularly prone to outside factors of a public nature. The unattended vehicle fits into this category because when such a vehicle is in a public place it is subject to all manner of danger.
When a clause is susceptible to more than one interpretation, in light of the facts, a court cannot determine, as a matter of law, that no coverage was intended. The issue becomes a mixed question of fact and law as stated by the court in Kenyon v. Knights Templar & Masonic Mut. Aid Assn. (122 N. Y. 247, 254) as quoted in Lachs v. Fidelity & Cas. Co. of N. Y. (306 N. Y. 357, 364): “ It may preliminarily be observed that, as a general rule, the construction of a written instrument is a question of law for the court to determine, but token the language employed is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used, in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact ” (emphasis added).
The language of the clause is not free from ambiguity when these facts are applied. We have a car in a private garage, secured by more than the usual safeguards against theft and the owner is in his home immediately adjacent to the garage. Had the jewelry been removed from the ear and placed on the garage floor, none of the exclusionary provisions would be applicable. Why then, when the custodian of the insured goods takes more than adequate precautions against theft from the private home property, should an exclusionary provision relating to a public situation come into effect?
The controlling feature is that the goods were in the insured’s private garage, a location not within the exclusionary terms of the policy. The fortuitous factor that the goods were within an ‘1 unattended ’ ’ vehicle within the garage is irrelevant. In such a situation the fact that the goods were within a garage (the major container) is controlling, rather than the fact that within the garage, the goods happened to be in an automobile trunk (a lesser container), the garage not having been excluded from coverage under the policy.
As the facts were conceded for the purposes of this motion only, no final determination of the issues can be made as a matter of law. Accordingly, summary judgment is denied.